UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00661-TBR

USAA LIFE INSURANCE COMPANY, INC.                                    Plaintiff,

v.

DIANA SPACE, COLETTA AKIN, RUTHIE AKIN,
SOPHIA AKIN, JAMES AKIN, and PHILLIP AKIN                            Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon two motions. The Court will first consider Plaintiff USAA Life Insurance Company, Inc.'s motion for leave to deposit funds and for discharge, (Docket No. 25), to which Defendants Coletta Akin, James Akin, Phillip Akin, Ruthie Akin, and Sophia Akin have responded, (Docket No. 30), and USAA has replied, (Docket No. 33). The Court will also consider the Akin Defendants' motion to strike and dismiss certain portions of the crossclaim filed by Defendant Diana Space. (Docket No. 24). Space has responded to this motion, (Docket No. 28), and the Akins have replied, (Docket No. 32). Fully briefed, these matters stand ripe for adjudication. For the reasons that follow, the Court will GRANT IN PART and DENY IN PART USAA's motion for leave to deposit funds and will DENY the Akins' motion to dismiss.

**Factual Background**

Rose Marie Akin died on May 21, 2014. The instant interpleader action arises from her family's subsequent disputes regarding her property and the proceeds of her life insurance policy. This conflict lies between Rose's sister, Diana Space, and Rose's stepson and stepdaughter-in-law, Phillip and Coletta Akin, who are the parents of Ruthie, Sophia, and James. USAA contends that the family's disagreements create the potential for conflicting claims, leaving it unable to ascertain which of the potential

1

beneficiaries is entitled to the policy proceeds. It moves to interplead such funds to allow the claimants to litigate ownership pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. § 1335.

USAA insured Rose's life under two separate insurance contracts, each in the amount of $300,000. Only one contract is at issue here. Until February 2014, the policy at issue designated that Gary Akin—Rose's husband and Phillip's father—as the primary beneficiary, with Space as the contingent beneficiary. (Docket No. 1 at 2.) Gary died in October 2013, after which Rose's mental and physical health declined rapidly. In February 2014, USAA received paperwork altering the beneficiary designations of the policy at issue, naming Coletta and her three children as the beneficiaries. (Docket No. 1 at 2-3.)

On March 10, 2014, Rose executed a power of attorney document naming Phillip and Coletta as her attorneys-in-fact. (*See* Docket No. 28-1.) The following day, she was admitted to a psychiatric institution, where a physician declared her unable to manage her personal, medical, and financial affairs. (*See* Docket No. 28-1.) On May 15, 2014, USAA received a second change of beneficiary designation for the two policies, naming Phillip as the beneficiary of one of the insurance contracts and Diana Space as the other.

On May 21, 2014, Rose drowned in a pond alleged to be near Phillip's home. Pursuant to the May 14, 2014, change of beneficiary, USAA paid Space $300,000 upon Rose's death under one of the contracts. It has not issued a payment under the other, from which this litigation arises. USAA attributes its failure to award such benefits to "significant questions" surrounding Rose's death; the company alleges that these questions leave it unable to determine the proper beneficiary. Toxicology reports indicate that just before Rose died, she took an excessive dosage of over-the-counter medication. Although an investigation identified no foul play, Rose's sisters have requested that law enforcement personnel reopen the investigation. It is suggested that results of such an investigation could prove

significant to the questions at issue: Kentucky law provides that if a beneficiary is convicted of taking the life of the decedent, he forfeits his interest in the life insurance policy.[1]

The Akins have filed a counterclaim, alleging that USAA breached its contractual duties to its insured. They have also asserted a crossclaim against Space, alleging that her "questions" regarding changes to the beneficiary designation are "unsubstantiated and potentially false, slanderous and libelous." (Docket No. 17 at 3.) They further contend that Space has tortuously interfered with their right to receive the proceeds to which they are entitled.

For her part, Space has filed a crossclaim against the Akin Defendants. According to Space, her sister's waning health left her vulnerable to coercion and manipulation, and she lacked the capacity to alter the beneficiary designations. She alleges that Rose made such changes only because of undue influence exerted by Phillip and Coletta, whom she contends violated their confidential relationships with Rose. Space further contends that as attorney-in-fact, Phillip Akin withdrew or transferred over $200,000 from Rose's Wells Fargo checking account and terminated certain accounts with sums that were payable on death to Space. (Docket No. 18.) Finally, Space claims that Phillip Akin may have transferred other funds or property to Space's detriment. (Docket No. 18 at 5.)

## I. The Court enjoys jurisdiction over the instant action and will permit USAA to deposit a bond into the registry of the Court.

The Court first turns to USAA's motion to for leave to deposit $300,000 with the Clerk of the Court in this interpleader action. "'Interpleader is a procedural device which entitles a person holding money or property, concededly belonging at least in part to another, to join in a single suit two or more persons asserting mutually exclusive claims to the fund.'" *Mudd v. Yarbrough*, 786 F. Supp. 2d 1236,

---

[1] "[I]f . . . the beneficiary under any insurance policy takes the life of the decedent . . . and . . . is convicted therefor, the person so convicted forfeits all interest in and to the property of the decedent . . . and the property interest or insurable interest so forfeited descends to the decedent's other heirs-at-law, beneficiaries, or joint tenants, unless otherwise disposed of by the decedent." KRS 831.280(1). If no other heirs-at-law exist, the property escheats to the Commonwealth. KRS 381.280(3).

1240 (E.D. Ky. 2011) (quoting *White v. Fed. Deposit Ins. Corp.*, 19 F.3d 249, 251 (5th Cir. 1994)). Generally, interpleader actions are comprised of two stages. First, "the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader." *United States v. High Tech. Prods,. Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (citing 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1704 (3d ed. 2001)). The court then "determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *Id.*

In the Sixth Circuit, the "primary test" for determining whether interpleader is appropriate evaluates "whether the stakeholder legitimately fears multiple vexation directed against a single fund or property." *Id.* at 642 (quoting 7 Fed. Prac. & Proc. Civ. § 1704). The requirement of a "legitimate" fear of such litigation does not suggest that the Court must review the merits of the claims; this task is left for the second stage of the action. *Mudd*, 786 F. Supp. at 1240 (citing 7 Fed. Prac. & Proc. Civ. § 1074; *John Hancock Mut. Life. Ins. Co. v. Kraft*, 200 F.2d 952, 954 (2d Cir. 1953) ("In an interpleader action, the jurisdiction of the court is not dependent on the merits of the claims of the defendants.")). The Sixth Circuit has found the "legitimacy" requirement satisfied where multiple claimants raise competing claims for the same identifiable "stake." *Id.* (citing *High Tech Prods.*, 497 F.3d at 642).

USAA foresees the potential for multiple or inconsistent judgments against it, as both Space and the Akins claim that they are entitled to the policy's death benefit. (Docket No. 1.) Accordingly, because USAA is subject to competing claims for these funds, the interpleader action is appropriate.

Federal courts rely upon two bases for interpleader actions; USAA relies alternatively upon each. The first approach, known as "rule interpleader," arises from Federal Rule of Civil Procedure 22 and is "merely a procedural device" that does not imbue the Court with subject matter jurisdiction. *Sun Life*

4

*Assur. Co. of Canada v. Thomas*, 735 F. Supp. 730, 732 (W.D. Mich. 1990) (citing *Bell & Beckwith v. United States*, 766 F.2d 910, 914) (6th Cir. 1985)). Accordingly, the Court must have either diversity or federal question jurisdiction over such cases. *Id.*

The second approach, known as "statutory interpleader," arises from the Federal Interpleader Act, codified at 28 U.S.C. §§ 11135, 1397, and 2361. This provision "enjoys liberal procedural rules including relaxed venue, personal jurisdiction and service of process requirements as well as broad discretion to enjoin overlapping litigation." *Bhd. Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 694 (E.D. Ky. 2002) (citing 28 U.S.C. §§ 1397, 2361). Pursuant to the statute, district courts enjoy original jurisdiction "of any civil action of interpleader or in the nature of interpleader" so long as three elements are satisfied. First, the amount in controversy must exceed $500. 28 U.S.C. § 1335(a). This element is satisfied when the value of an insurance policy exceeds $500, as is unquestionably the case here. *See, e.g.*, *John Hancock Mut. Life Ins. Co. v. Brown*, 73 F. Supp. 982, 983 (E.D. Mich. 1947). Second, there must be two or more adverse claimants who are of diverse citizenship as defined by the typical requirements for diversity jurisdiction. 28 U.S.C. § 1335(a)(1). This factor is also satisfied, as Space is citizen of North Carolina and the Akins are citizens of Kentucky. Finally, the plaintiff must deposit with the Court either the full amount at stake or a bond in an amount deemed appropriate by the Court. 28 U.S.C. § 1335(a)(2). The Court will permit USAA to deposit the sum of $300,000, with interest thereon from the date of death of Rose Akin, into the registry of the Court. Accordingly, because all three statutory requirements have been satisfied, the Court has jurisdiction over this action pursuant to the Federal Interpleader Act.

II.   **The Court will deny USAA's motion to restrain the defendants from commencing actions against it and to be discharged from any liability in the instant matter.**

In addition, USAA seeks to restrain the defendants from commencing any action against it and to be discharged from any liability in the instant matter. (Docket No. 25.) The Akin Defendants, who have filed a counterclaim against USAA, object to this portion of USAA's motion. (Docket No. 30.)

5

In their counterclaim, the Akins allege that on May 15, 2014, Rose submitted an online change of beneficiary form naming Phillip Akin as the beneficiary of one of the insurance contracts and Diana Space as the other. Pursuant to the May 14, 2014, change of beneficiary, USAA paid Space $300,000 upon Rose's death under one of the contracts; it has not issued a payment under the other contract, which is the subject of the instant action. The Akins argue that USAA's failure to pay these policy benefits constitutes breach of the insurance agreement to which Phillip Akin is a third-party beneficiary. According to the Akins, any questions regarding the authenticity of the May 15, 2014, change of beneficiary form apply to both insurance contracts. They therefore argue that USAA's doubts as to the document's validity should have precluded it from paying under *either* contract, and the February 3, 2014, change of beneficiary form should have governed in such a case, resulting in payment of the proceeds to Coletta and her children.

The Akins further submit that if the change of beneficiary form is deemed valid, the only remaining issue is whether Kentucky's "slayer" statute requires Phillip Akin to forfeit his benefits. But that statute does not appear to apply to any member of the Akin family, as none of them have been charged—much less convicted—of one of the qualifying crimes. To the contrary, the Akins note that they have consistently cooperated with law enforcement and have passed the polygraph exam administered on March 4, 2015. (*See* Docket No. 30 at 3.)

Given the pending counterclaim, the Court is not convinced of the prudence of discharging USAA at this juncture. "When a defendant brings a counterclaim against the interpleader, an interpleader is kept in the litigation to defend against the counterclaim, rather than being dismissed from the litigation after depositing the disputed funds with the court." *Wachovia Bank, N.A. v. Zomax Inc.*, 2009 WL 3698443 at *4 (S.D. Ohio Nov. 3, 2009) (citing *United States v. High Technology Products*, 497 F.3d 637, 643 (6th Cir. 2007) (holding that "the district court had the power to adjudicate, in conjunction with the interpleader action, any damage claims related to [the subject of the action] that were brought before the district court by the parties.")). An interpleader action immunizes the interpleader-plaintiff from

6

counterclaims that are "essentially based on the plaintiffs having opted to proceed via an interpleader complaint rather than having chosen from among adverse claimants." *Id.* (citing *Metropolitan Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001) (holding that claims that arise from "utilizing the protections afforded by the interpleader" should be dismissed). However, such an action does not protect counterclaims that are distinct from claims to the interpleaded funds.

In their counterclaim, the Akins do not allege that USAA violated a specific state or federal law. However, in their objection to the instant motion, they speculate that USAA "may have violated Kentucky's [s]tatutes regarding unfair trade practices in their failure to timely pay benefits that could be a separate cause of action the Akin family may have against the Company." (Docket No. 30 at 4.) The Court makes no judgment as to the merits of such a claim at this stage. However, because this claim could be conceivable, the Court is reluctant to discharge USAA from the action upon the basis of the instant motion.

Nor is the Court convinced that it must award USAA attorney fees at this point. Generally, a disinterested plaintiff who brings a necessary interpleader action as a "mere stakeholder" is entitled to a reasonable award of attorney fees. *See Mutual Life Ins. Co. v. Bondurant*, 27 F.2d 464, 465 (6th Cir. 1928). At the outset, it appears that USAA falls within this general rule. The action was necessary, as USAA would have potentially been subject to multiple lawsuits had it opted to award the benefits at issue to either claimant. What is more, USAA is a "disinterested stakeholder" with no interests in which claimant receives the contested funds. USAA did not make a claim to the policy, nor did it dispute its amount. At first blush, then, USAA would appear to be entitled to attorney fees.

But there are exceptions to *Bondurant*'s general rule. "[W]hether a court should allow a party who commences an interpleader action to recover his attorney fee and costs of the action is a matter committed to judicial discretion." *In re Robby's Pancake House of Florida, Inc. v. Walker*, 24 B.R. 989, 993 (Bkrtcy. E.D. Tenn. 1982) (citing *Western Life Ins. Co. v. Nanney*, 290 F. Supp. 687, 688 E.D. Tenn.

7

1968)). Such fees are "rarely awarded as a matter of course." *Paul Revere Life Ins. Co. v. Riddle*, 222 F. Supp. 867, 868 (E.D. Tenn. 1963). Courts have relied upon three theories to exclude insurance companies from the general rule. First, courts have reasoned that insurance companies should not be compensated simply because conflicting claims have arisen during the normal course of business. *Unum Life Ins. Co. of American v. Kelling*, 170 F. Supp. 2d 792, 794 (M.D. Tenn. 2001) (citing *Sun Life Assurance Co. of Canada v. Thomas*, 735 F. Supp. 730, 732 (W.D. Mich. 1990) (declining to award attorney fees because "conflicting claims to benefits owed by beneficiaries . . . are inevitable")). Second, courts have denied attorney fees because insurance companies are necessarily interested stakeholders, as filing the interpleader action ensures that the company will not incur further liability under the contested policy. *Kelling*, 170 F. Supp. 2d at 794-95. Finally, courts have relied upon the policy argument that awarding attorney fees "would senselessly deplete the fund that is the subject of preservation through interpleader." *Id.* at 795 (citations omitted).

Applying these factors, the matter is less straightforward than USAA suggests. Having examined the facts available at this stage, the Court will exercise its discretion to deny USAA's request for attorney fees. This situation appears to reflect the concerns articulated in the first two *Kelling* exceptions. First, such claims appear to be of the sort that ordinarily occur during an insurance company's normal course of business. As *Kelling* noted, insurance companies should foresee that they will encounter conflicting claims in the normal course of their business. The costs of responding to such claims need not be transferred to the insured. "'[The court is] not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business to their insureds.'" *Id.* at 795 (quoting *Travelers Indemnity Co. v. Israel*, 354 F.2d 488, 490) (2d Cir. 1965) (substitution in original)). Moreover, as in *Kelling*, USAA has an interest in obtaining a judgment as a result of the interpleader suit in order to shield it from litigation from a disgruntled claimant. *See id.* For these reasons, USAA's request for attorney fees will be denied.

**III.     The Court will deny the Akins' motion to strike portions of Diana Space's crossclaim.**

Finally, the Court turns to the Akins' motion to strike portions of Space's crossclaim against them. As discussed above, the crossclaim's scope is not limited to issues surrounding the insurance policy: Space also alleges that Phillip and Coletta Akin breached a duty of good faith to Rose and that Phillip improperly interfered with a checking account and other unnamed accounts and property. (Docket No. 18 at 4-5.) The Akins argue that allegations unrelated to the insurance policy are improperly raised pursuant to Federal Rule of Civil Procedure 13(g) and ask that the Court decline jurisdiction over such claims. (Docket No. 24-1.)

Federal Rule of Civil Procedure 13(g) provides:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the crossclaimant.

Fed. R. Civ. P. 13(g). The Sixth Circuit has directed that in the interest of judicial economy, courts should liberally construe Rule 13. *Lasa Per L'Industria Del Marmo Societa v. Alexander*, 414 F.2d 143, 146 (6th Cir. 1969) (noting that Rule 13 was "intended to avoid circuity of action and to dispose of the entire subject matters arising from one set of facts in one action, thus administering complete and evenhanded justice expeditiously and economically.") (quotations omitted). So long as a crossclaim is raised under the "same core of facts" as the original complaint, a court requires no further basis for jurisdiction. *Alexander*, 414 F.2d at 146.

The key question concerns whether Space's crossclaim arises "out of the transaction or occurrence that is the subject matter of either the original action or of a counterclaim therein . . . ." Fed. R. Civ. P. 13(g). A "logical relationship" test has been "generally . . . accepted as the standard for determining whether there is a properly assertable crossclaim." 6 Fed. Prac. & Proc. § 1432; *see also*

*Alexander*, 414 F.2d at 146 (citing *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991)). The Court must consider "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Sanders*, 936 F.2d at 277 (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926)).

Applying the logical relationship test, the Court concludes that the essential facts that provide the bases for Space's claims are nearly identical, and the same legal theories underlie each. At the heart of both claims is the allegation that Phillip Akin intentionally exerted undue influence in an effort to prevent Space from acquiring benefits to which she was arguably entitled. According to Space, these actions were related arms of a unified scheme: the same alleged violations that caused her to be removed as a life insurance beneficiary also deprived her of assets that were to pass to her by other beneficiary designations. Common questions lie at the core of both allegations: for example, what was the nature of the Akins' relationship with Rose, and did they improperly employ that relationship to thwart her intentions? The parties will likely rely upon similar evidence to support their claims and defenses concerning both the life insurance death benefit and the property in Rose's estate. The legal issues underlying Space's claims are intertwined with those asserted in USAA's initial complaint, which seeks to determine which claimants are entitled to the proceeds of Rose's life insurance policy. By virtue of her crossclaim, Space seeks a ruling that she is entitled to such proceeds. Because Space's crossclaim is sufficiently interrelated with the claims concerning the life insurance policy, it is properly litigated in the same action.

The Akins observe that the crossclaim expands the focus of the lawsuit to matters generally addressed in state court. The Court must agree, of course. The Court does not seek to unduly augment its jurisdiction, nor does it wish to cause this litigation to become unnecessarily complex. However, to decline jurisdiction over Space's crossclaim would be to ignore the categorical instruction of Rule 13(g). Space's crossclaim arose from the transaction or occurrence that was the subject of the original action— that is, the alleged actions of the Akins on Rose's behalf as her attorney-in-fact. It involves only coparties

to the interpleader action. Construing Rule 13(g) liberally, as it must, the Court concludes that all of Space's allegations arise from the same transaction or occurrence asserted in the original complaint. Therefore, they are properly asserted here.

The Akins further note that the sum transferred from a payable-on-death checking account to a non-payable-on-death savings account is now contained within the estate. They contend that because other beneficiaries who are not parties to this lawsuit may claim an interest in such sums, complete relief cannot be granted. According to the Akins, Space's failure to include the estate's administrator and other beneficiaries leaves the Akins at risk of incurring inconsistent obligations. They caution that if Space's claim proceeds, the Court may order the return of money that they would seek from other beneficiaries, who may then levy claims against Space for their portion of such money. Space disagrees, arguing instead that should the Akins choose to join the estate in an effort to recoup their losses, it is incumbent upon them—not her—to seek its joinder.

The Akin Defendants would appear to rely upon Rule 12(b)(7), which permits defendants to seek dismissal based on a plaintiff's failure to join a party pursuant to Rule 19. *See Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 669 (6th Cir. 2004) (citing Fed. R. Civ. P. 12(b)(7)). In determining whether parties are indispensable such that equity and good conscience require their joinder, the Court adheres to a two-step process. First, the Court must determine whether the party is "necessary" pursuant to Rule 19(a). According to Rule 19(a), a person must be joined as a party in the action "if (1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or, (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations." *Safeco Ins. Co.*, 36 F.3d at 546 (citing Fed. R. Civ. P. 19(a)(1), (2)(i)-(ii)). Second, if the Court determines that the party is necessary, it must then determine whether he is dispensable. "A person or entity 'is only indispensable, within the meaning of Rule 19, if (1) it is necessary, (2) if joinder of the necessary person or entity will deprive the court of subject matter jurisdiction, and (3) the court determines that it will dismiss the pending case rather than proceed in the

11

case without the absentee.'" *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (quoting 4 Moore's Federal Practice § 19.02(3)(c), at 19-22). The Court looks to four factors when considering whether a party is indispensable. Fed. R. Civ. P. 19(b). "'The four 'interests' protected by Rule 19(b) are (1) plaintiff's interest in having a forum, (2) defendant's interest in avoiding multiple litigation, (3) interest of the outsider whom it would have been desirable to join, and (4) interest of the courts and the public in complete, consistent, and efficient settlement of controversies.'" *Pixler v. Huff*, 2013 WL 3423704 at *2 (W.D. Ky. July 8, 2013) (quoting *S&S Machinery Corp. v. Gen. Motors Corp.*, 1994 WL 529876, at *3) (S.D.N.Y. Sept. 28, 1994)).

Neither Space nor the Akin Defendants have presented developed arguments as to the factors articulated above. "When conducting the Rule 19 analysis . . . courts and litigants have frequently been guilty of 'engag[ing] in thoughtless labeling based on legal relationship rather than on ad hoc analysis of relevant factors and the underlying policies.'" *Stanley Elec. Co., Inc. v. Crawford Equip. & Engineering Co.*, 249 F.R.D. 267, 272 (S.D. Ohio 2008) (quoting 4 James William Moore et al., Moore's Federal Practice § 19.02(2)(c) at 19-12, 19-13 (3d ed. 2007)). Proper analysis of Rule 19's significance requires a more substantial inquiry into the specificities and practicalities of the claims at issue. *See SW Ohio Carpenters v. E & I Const.*, 2006 WL 2035646, at* 2 ("Rule 19 is not to be applied in a rigid manner but should instead be governed by the practicalities of the individual case.") (citing *PTG Logistics, LLC v. Bickel's Snack Foods, Inc.*, 196 F. Supp. 2d 593, 605 (S.D. Ohio 2002)). Moreover, dismissal would yield an unnecessarily harsh outcome. The Sixth Circuit has observed that Rule 19 "calls for a pragmatic approach; simply because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded." *PTG Logistics*, 196 F. Supp. 2d at 605 (citing *Smith v. United Brotherhood of Carpenters & Joiners of America*, 685 F.2d 164, 166 (6th Cir. 1982)). Accordingly, the Court will not dismiss Space's crossclaim on this basis.

## Conclusion and Order

In accordance with the above discussion, the Court will GRANT IN PART and DENY IN PART USAA's motion for leave to deposit funds and for discharge, (Docket No. 25), and will DENY the Akins' motion to dismiss, (Docket No. 24), as follows:

1. USAA Life Insurance, Inc., shall deposit the sum of $300,000.00 with interest thereon at the statutory rate of 12% per annum from May 21, 2014, into the registry of the Court for ultimate distribution by order of this Court. There shall be no reduction for attorney fees from this amount.

2. USAA Life Insurance, Inc.'s motion restraining the Defendants from commencing any action against USAA on the insurance policy and its request to be discharged from this action are hereby overruled at this time pending resolution of the counterclaim filed by the Akin Defendants.

IT IS SO ORDERED.